UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                              Case No.  3:13-cr-124-J-34MCR

ANDRE ALSTON,

      Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant Andre Alston's Motion to Dismiss (Doc. 19), filed July 24, 2014.[2]  The United States filed a response (Doc. 22) on August 5, 2014.  A hearing on the Motion was held before the undersigned on September 3, 2014.[3]  The Court heard testimony from Special Agent Kristi Calhoun of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; Nickey Taylor of the Mayo Correctional Institution; Scott Crews of the Mayo Correctional Institution; Michelle Ambroise of the Florida Department of Corrections; and Robert Adams of the Florida Department of Corrections.  Upon consideration of the arguments from counsel and the evidence presented, the undersigned respectfully recommends the Motion to Dismiss be **DENIED** for the reasons set forth herein.

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. §636(b)(1) and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2] Defendant filed a *pro se* motion on May 23, 2014 (Doc. 8), which was adopted by counsel in the instant motion.

[3] References to the transcript of the hearing will be "Tr." followed by the page number that is set forth by the court reporter.

I.      **Evidence Presented at the Hearing**

On June 20, 2013, a federal grand jury seated in Jacksonville, Florida returned a one-count indictment (Doc. 1) against Defendant for possession of a firearm by a convicted felon. On the same day, the Court issued a capias for Defendant's arrest (Docs. 2 & 3). At the time the indictment was returned, Defendant was in Florida state custody on two then-pending charges of sale of a controlled substance. (Tr. 6-7.) On August 1, 2013, Defendant was sentenced to 24 months in state prison for the two counts of sale of a controlled substance. (Tr. 7.)

On September 3, 2013, Special Agent Kristie Calhoun with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") sent a detainer request to the Florida Department of Corrections. (Tr. 7; Ex. 1.) The correspondence from SA Calhoun indicated that an arrest warrant had been issued for Defendant in the United States District Court for the Middle District of Florida for the charge of possession of a firearm by a convicted felon. (Ex. 1 at 1.) SA Calhoun's correspondence requested that Defendant be notified of his rights pursuant to the Interstate Agreement on Detainers Act ("IADA"). (*Id.*) Specifically, the correspondence requested the following, in pertinent part, be read to Defendant:

> With regard to answering these charges, you are hereby advised that you have the right to demand a speedy trial under the Interstate Agreement on Detainers Act (IADA). Under the IADA, you have the right to be brought to trial within 180 days after you have caused to be delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court, written notice of your request for a final disposition of the charges against you. Because the 180 day time limit may be tolled by virtue of delays attributable to you, you should periodically inquire as to whether your written notice of request for a final disposition of the charges against you has been received by the appropriate U.S. Attorney and the

>appropriate U.S. District Court. You are hereby advised that the 180 day time limit does not commence until your written notice of request for final disposition of the charges against you has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court.[4]

(Ex. 1 at 2.) The correspondence requested the Florida Department of Corrections to provide one copy of the detainer to Defendant and return one copy to the ATF. (*Id*. at 3). Additionally, the correspondence requested the Florida Department of Corrections to forward the detainer with a Certificate of Inmate Status by registered or certified mail to the United States Attorney's Office and the United States District Court for the Middle District of Florida if Defendant demanded a speedy trial pursuant to the IADA. (*Id*. at 3).

On September 5, 2013, Michelle Ambroise, the Interstate Agreement on Detainers Coordinator for the Florida Department of Corrections, sent a memo to the Mayo Correctional Institute where defendant was being held. (Tr. 20-21, Ex. 4.) The memo advised that a detainer request had been submitted with respect to Defendant, and stated Defendant should be interviewed and advised of his rights under the IADA. (Ex. 4.) The memo also stated that Florida Department of Corrections IADA Forms I, II, III, and IV should be completed and returned to her if Defendant elected to assert his rights under the IADA. (*Id.*) Form I, entitled "Notice of Untried Indictment, Information, or Complaint and of Right to Request Disposition," advised Defendant that if he requested final disposition be made of the charges against him, he would be brought to trial within 180 days "after you have caused to be delivered to said prosecuting officer and said court" written notice of the request. (Ex. 2 at 3.) Form II, entitled "Inmate's

---

[4] Based on testimony before the Court, it appears this language from SA Calhoun's correspondence was not used to advise Defendant of his rights under the IADA. Instead, it seems Defendant's rights were explained to him through use of the Florida Department of Corrections IADA Forms as discussed herein.

Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints," advised Defendant that the document operated as a request that final disposition be made of the indictment pending against him (*Id*. at 4). Form III, entitled "Certificate of Inmate Status," requested information from the warden pertaining to the amount of time served by Defendant (*Id.* at 5). Form IV, entitled "Offer to Deliver Temporary Custody" served as a means to provide notice of the transfer from the transferring jurisdiction to the jurisdiction in which charges were pending (*Id*. at 6).

On September 11, 2013, Nickey Taylor, Supervisor of Inmate Records for Mayo Correctional Institute, met with Defendant and reviewed the IADA forms with him as requested in Ms. Ambroise's memo. (Tr. 20.) Defendant elected to assert his rights under the IADA and executed Forms I and II. (Ex. 2 at 4, 5.) The Forms were submitted to Scott Crews, Warden of the Mayo Correctional Institute, who signed Forms I, III, and IV. (Ex. 2 at 4, 6, 8.) All four Forms were then forwarded to Ms. Ambroise who reviewed them for completion. Upon receipt, Ms. Ambroise completed certain items on Forms II and IV which were left blank. (Tr. 25, 41-42.) These items requested information as to the jurisdiction to which Defendant would be transferred for prosecution. Ms. Ambroise mistakenly entered Duval County as the appropriate jurisdiction in these items rather than the Middle District of Florida, the jurisdiction from which the indictment against Defendant originated.

On or about September 23, 2013, The Florida Department of Corrections sent correspondence to the ATF office in Jacksonville with the executed IADA forms enclosed. (Ex. 2.) The cover letter indicated in the "cc:" section that copies were sent

to "Clerk of the Court, Duval County" and the Mayo Correctional Institution Florida IAD Administrator. (*Id*. at 2). The executed IADA forms were not sent to the United States Attorney's Office or the United States District Court for the Middle District of Florida. There is no record of the Florida Department of Corrections ever sending a copy of the executed request to the District Court or the United States Attorney for the Middle District of Florida. However, the Court heard testimony from SA Calhoun that she placed a phone call to the U.S. Attorney's office shortly after receiving the executed IADA forms from the Florida Department of Corrections. (Tr. 14.)

On May 2, 2014, SA Calhoun received correspondence from Defendant (Tr. 12; Ex. 3.) In the letter, Defendant inquired as to the status of the detainer and his IADA request. (*Id.*) SA Calhoun notified the United States Attorney's Office of Defendant's letter. (Tr. 12.) On May 15, 2014, the United States filed a Petition for Writ of Habeas Corpus Ad Prosequendum (Doc. 6), which was granted on May 16, 2014 (Doc. 7). The writ directed the United States Marshal to transport Defendant to the Middle District of Florida, Jacksonville Division for an Initial Appearance on June 30, 2014 (Doc. 9). On May 23, 2014, Defendant filed his *pro se* motion to dismiss (Doc. 8), which was adopted by his counsel on July 24, 2014 (Doc. 19).

## II.    Discussion

In the instant motion, Defendant seeks to dismiss the indictment against him for failure of the United States to bring Defendant to this jurisdiction within the specified period after his demand pursuant to the Interstate Agreement on Detainers Act ("IADA"), 18 U.S.C. App. 2. Defendant asserts the United States Attorney for the Middle District of Florida, as an entity of the Department of Justice, was notified of Defendant's

demand to exercise his rights under the IADA when the ATF accepted his executed documents on September 25, 2013.  (Doc. 19 at 2.)  Additionally, Defendant argues the United States Attorney received notification of Defendant's demand though a phone call placed by ATF Special Agent Calhoun to the U.S. Attorney's office in September of 2013.  (Tr. 64-65.)  Defendant argues that because his first appearance before this Court on June 30, 2014 was beyond 180 days of receiving notice of Defendant's demand under the IADA, the indictment should be dismissed with prejudice.

The IADA is a compact among forty-eight states, the District of Columbia, and the United States Government that establishes procedures by which one jurisdiction may temporarily obtain custody of a prisoner incarcerated within another jurisdiction for the purposes of bringing that prisoner to trial on pending charges.[5]  See 18 U.S.C. App. 2.  A criminal justice agency within one jurisdiction may file a notice called a "detainer" with the institution in which the prisoner is incarcerated, "advising that he is wanted to face pending criminal charges in another jurisdiction, and requesting that the prisoner either be held for the other jurisdiction's prosecutors or that these prosecutors be notified when the prisoner's release is imminent."  *United States v. Paredes-Batista*, 140 F.3d 367, 372 (2d Cir. 1998) (citations omitted).  The purpose of the IADA is to "encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints."  18 U.S.C. App. 2 § 2, Art. I.

Article III of the IADA provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to

---

[5] Florida and the United States are both parties to the IADA.  See 18 U.S.C. App. 2.

the detainer by filing a request for final disposition. Whenever a detainer is lodged by one jurisdiction's criminal justice agency against a prisoner held by another jurisdiction, the prisoner must be brought to trial "within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court" written notice of his demand for final disposition. 18 U.S.C. App. 2 § 2, Article III(a).[6] The written notice and request for disposition "shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate [of inmate status] to the appropriate

---

[6] Specifically, Article III of the IADA provides, in pertinent part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: Provided, that, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments . . . on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed. . . .

prosecuting official and court by registered or certified mail, return receipt requested." Article III(b).

Article IV of the IADA provides the procedure by which the prosecutor of a jurisdiction where an untried indictment, information or complaint is pending can request custody of a prisoner against whom he has lodged a detainer. When the prosecutor has initiated such a transfer, "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving [jurisdiction]." Article IV(c).

In the instant case, Defendant submitted a speedy trial request to the Florida Department of Corrections, who forwarded it by certified mail to the ATF but failed to forward it to the United States Attorney's Office or the United States District Court for the Middle District of Florida. Defendant argues the United States Attorney for the Middle District of Florida, as an entity of the Department of Justice, was notified of Defendant's demand to exercise his rights under Article III of the IADA when the ATF accepted the executed documents on September 25, 2013. (Doc. 19 at 2.) However, in *Fex v. Michigan*, 507 U.S. 43, 113 S. Ct. 1085, 122 L.Ed.2d 406 (1993), the Supreme Court expressly determined that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him *has actually been delivered to the court and prosecuting officer of the jurisdiction* that lodged the detainer against him." (*Id*. at 52.) (emphasis added). Thus, the speedy trial deadlines under Article III of the IADA are triggered only upon the prosecutor's and court's actual receipt of a prisoner's speedy trial request.

The explicit holding in *Fex* governs the outcome of this case. Here, Defendant's

speedy trial request was not actually delivered to the United States Attorney's Office or the United States District Court for the Middle District of Florida when the Florida Department of Corrections mailed the request to the ATF. Delivery of the request to the ATF in September 2013 was insufficient to trigger the speedy trial deadlines under the IADA, because the ATF's receipt of the request is not imputed to the United States Attorney. *See United States v. Jones*, 454 F.3d 642, 647-48 (7th Cir. 2006) (holding prisoner's speedy trial request pursuant to the IADA did not trigger the 180-day time period, even though request was forwarded by prison warden to United States Marshals' office in the relevant district because the language of the IADA "does not contemplate authorized agents" and the prisoner could not show his request was actually delivered to the U.S. Attorney or the district court); *Paredes-Batista*, 140 F.3d at 373-74 (holding the 180-day period began to run when the prisoner's speedy trial request was actually delivered to the United States attorney, as prosecutor of the jurisdiction filing the detainer, and the district court, not when prison officials mailed the prisoner's request to the United States Marshals' office, who failed to forward it to the prosecutor).

      Alternatively, Defendant contends the IADA's delivery requirement was satisfied in this case in light of testimony that SA Calhoun called the U.S. Attorney's office in September 2013 shortly after receiving notice of Defendant's IADA request. (Tr. 64-65.) Defendant contends "delivery" for purposes of the IADA does not require hand delivery of documents. (*Id.*) Rather, the delivery requirement is intended to provide notice to the Government of a defendant's desire to exercise his rights. (*Id.*) Defendant contends

the United States obtained such notice in the instant case by virtue of the alleged phone call to the U.S. Attorney's Office. (*Id.*) Accordingly, Defendant concludes the IADA's delivery requirement was satisfied.

Contrary to Defendant's argument, the IADA's delivery requirement demands more than mere notice of a defendant's intent to participate. *See Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998) (holding defendant's letter to the court, in which he inquired about the detainer and demanded speedy trial, was insufficient to satisfy the delivery requirement because the letter did not provide the proper certificates and information required by the IADA). Instead, the IADA specifies particular items of information which must be delivered to the prosecuting official and appropriate court in order to initiate the 180-day period. Specifically, the Act requires written notice of the place of the individual's imprisonment, a request for final disposition of the indictment against him, and a certificate of the appropriate official having custody of the prisoner with information pertaining to the amount of time served in prison. 18 U.S.C. App. 2 § 2, Article III(a).

Moreover, assuming SA Calhoun's phone call in September 2013 satisfied the IADA's delivery requirement with respect to the prosecuting officer, the additional requirement of delivery to the Court would still remain unsatisfied. *See U.S. v. Washington*, 596 F.3d 777 (10th Cir. 2010), cert. denied, 130 S. Ct. 3531, 177 L. Ed. 2d 1110 (2010) (explaining delivery had not been made to the court even though one copy of the request was addressed to "Department of Justice, Court," and the United States Attorney's Office could have forwarded the request); *U.S. v. Brewington*, 512 F.3d 995

(7th Cir. 2008) (explaining a prisoner's demand for trial under the IADA did not trigger the 180-day period even though the demand was received by the prosecuting officer because the appropriate court never received the demand).

In this case, the IADA forms executed by Defendant were not provided to the Court until the government filed its response in opposition to Defendant's motion to dismiss (see Doc. 22). Defendant's *pro se* "Motion of Dismissal of Detainers" (Doc. 8) did not include the executed IADA forms, and his *pro se* pleading was insufficient to satisfy the delivery requirement because it did not provide the information required by the IADA. See *Lara*, 141 F.3d at 243. Because Defendant's speedy trial demand was not "actually delivered" to the United States Attorney's Office for the Middle District of Florida *and* the United States District Court for the Middle District of Florida prior to his initial appearance, the 180-day time period under Article III is inapplicable. Rather, pursuant to Article IV of the IADA, the applicable time period is 120 days from Defendant's arrival in the Middle District of Florida, which was on June 12, 2014. *See* 18 U.S.C. App. 2 § 2, Article IV (providing that trial shall be commenced within 120 days of the arrival of the prisoner in the jurisdiction in which an untried indictment is pending if the prosecutor for that jurisdiction initiates the transfer).

### III.     Conclusion

Based on the foregoing, the undersigned respectfully recommends Defendant Andre Alston's Motion to Dismiss (Doc. 19) be **DENIED**.

**DONE AND ENTERED** in Jacksonville, Florida this 15 day of September, 2014.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record